FREDERICK ATANASIO, PLAINTIFF, v. SAMUEL W. SIL-
VERMAN, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided December 4, 1950.

118

*Mr. John G. Flanigan,* attorney for the plaintiff (*Mr. John Warren,* of counsel).

*Mr. Abraham Natovitz,* attorney for the defendant.

JOSEPH L. SMITH, J. S. C. The petition to set aside the order for offset is based upon three grounds:

(1) The former Supreme Court did not have jurisdiction to make the order for offset, said order being entered November 27, 1946, by former Chief Justice Case.

(2) Defendant was not entitled to the relief of offset because of fraud in securing the assignments of the judgments which are the basis for the offset, and because defendant came into court with unclean hands.

(3) The purchase by an employer of claims against his employees and the offsetting of them against unpaid wages is against the public policy of the State of New Jersey.

Each ground shall be discussed in order.

The former Supreme Court of New Jersey was a court of original jurisdiction and as such had jurisdiction over the subject matter of judgments and offset within its own court. It must be noted that all the judgments obtained and used by either party were obtained in the former Supreme Court. This is in effect an attempt by the plaintiff to review the decision of the former Supreme Court, and as such this court is without the proper jurisdiction to hear such an appeal. In so far as the instant matter is concerned, the proper procedure should have been an appeal to the former Court of

Errors and Appeals. Since the proper avenue of review was not adopted by the plaintiff he cannot now seek to review the proceedings in the former Supreme Court by means of a collateral attack in this court.

Plaintiff bases its claim that the court lacked jurisdiction on their interpretation of *R. S.* 2:26–182 to *R. S.* 2:26–187.2 inclusive. Now, these statutes deal with the situation wherein a judgment has been obtained by the creditor and he seeks to have "an execution issue against the wages, debts, earnings, salary, income from trust funds or profits of the judgment debtor." (*R. S.* 2:26–182.)

However, in the instant case there is no such an occurrence. The defendant Silverman did not seek an execution by virtue of *R. S.* 2:26–182 as contended by the plaintiff, but rather the defendant sought to have the judgment secured by the plaintiff against him offset by the judgments he, the defendant, had purchased by assignment. No execution was sought in any form or manner by virtue of *R. S.* 2:26–182.

*Trapp v. Brown,* 93 *N. J. L.* 171 (*E. & A.* 1919), as cited by plaintiff, is not dispositive of the problem presented here. In the *Trapp* case there was an order of execution against the moneys due or thereafter to become due. And by statute under such an execution only a percentage of the money could be taken now and when it became due and owing to the debtor. In the instant case there was no order for execution—only an order seeking an offset.

It has long been our rule that the right to have one judgment set off against another is within the discretion of the court. *Coxe ads. State Bank of Trenton,* 8 *N. J. L.* 172 (*Sup. Ct.* 1825). Also that a court of equity, in the exercise of a sound discretion, will direct one judgment to be set off against another, whenever such relief does not run counter to any established principle of law or equity. *Murray v. Skirm,* 73 *N. J. Eq.* 374 (*E. & A.* 1908).

I have run across an old line of cases which hold that in an action for *assumpsit* the judgment or debt to be set off must be due the defendant in his own right. *Reeves v. Hatkinson,*

3 *N. J. L.* 751 [*Reprint, p.* 319] (*Sup. Ct.* 1811). By the court:

"No doubt but that a judgment is a proper debt to be set off; but a judgment or other debt to be set off, must be due the defendant in his own right; set-off is a contrivance to prevent cross actions, and thereby to save costs, trouble and expense. We are of the opinion, that it ought to be such a debt as the defendant could bring an action for in his own name. * * *.

"Distinguished in *Brown ads. Hendrickson,* 10 *Vr.* 241." (*Brown ads. Hendrickson,* 39 *N. J. L.* 239 (*Sup. Ct.* 1877).

In *McAdams v. Randolph,* 42 *N. J. L.* 332 (*Sup. Ct.* 1880), Justice Scudder stated:

"The right to set off one judgment against another, or, more properly, to pay and satisfy one judgment by another, where the person holding the one judgment is liable under the other, has often been exercised to prevent circuity of action, and to so control the judgment and process of the court as to do justice between the parties. * * *

"I think this defendant, in the judgment against him, which has been assigned in good faith, has no right or equity to offset against it a judgment which he purchased subsequent to such assignment, doubtless for the very purpose of using it in this form.

"The order for set-off will be refused."

Since the original action in this matter was involving set-off and not execution, thereby by-passing plaintiff's claim of the court lacking jurisdiction, we are still confronted with the various claims of the plaintiff whereby he demands relief.

██ ██ "*Rule* 3:12–8. Waiver of Defenses:
"A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except * * * (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. * * *."

I cannot see any basis for the jurisdictional question raised by the plaintiffs so therefore it seems to me that the opening sentence of the rule controls and all his defenses and objections are waived. A set-off is a partial or entire defense within the meaning of this rule, requiring all defenses to be presented

either by motion, answer or reply. *Chicago Great Western Ry. Co. v. Peeler,* 140 *F.* 2d 865 (*C. C. A. Minn.* 1944).

■ Apparently plaintiff is relying on *Rule* 3:60–2 (4) in seeking to have the order set aside.

"*Rule* 3:60–2. Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.

"On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence * * *; (3) fraud, * * *, misrepresentation, or other misconduct of an adverse party; (4) the judgment or order is void; (5) the judgment or order has been satisfied, * * *; or (6) any other reason justifying relief from the operation of the judgment or order. * * *."

From a reading of the affidavits and briefs, coupled with the former cases rising out of this situation, *Atanasio v. Silverman,* 24 *N. J. Misc.* 390 (*Sup. Ct.* 1946), and *Atanasio v. Silverman,* 1 *N. J.* 245 (*Sup. Ct.* 1949), I cannot see where any of the grounds listed in *Rule* 3:60–2 could be sustained by the plaintiff.

From a reading of the prior two cases in this suit it appears that the court, at all times, was aware of the fact that the defendant had purchased at a nominal price the judgments used by himself as the basis for a set-off. Such a knowledge seems to forestall any claim of fraud. This is accentuated by the fact that none of the assignors have complained and have not charged the assignee, Silverman, with any misrepresentations. Only the plaintiff, Atanasio, who has been greatly affected by the prior useless judgments, has been heard to cry fraud.

■ As to the claim of unclean hands, little can be said for either party.

It appears from the letters in the file that the plaintiff had judgments docketed against him from $60,000 to $300,000 (no direct evidence of the exact amount) all unpaid.

■ Lastly, as to the violation of public policy as alleged by the plaintiff, in *Fidelity Union Trust v. Reeves,* 96 *N. J. Eq.* 490 (*Ch.* 1924); affirmed, 98 *N. J. Eq.* 412 (*E. & A.*

1925), it was held that the principles and doctrine of public policy are matters of common and professional knowledge. 11 *Am. Jur., Constitutional Law,* § 139, *"Public Policy,"* at *page* 814:

"In order to ascertain the public policy of a state with respect to any matter, the acts of the legislative department should be looked to, because a legislative act, if constitutional, declares in terms the policy of the state and is final so far as the courts are concerned. With the foregoing considerations as its basis, the rule has become securely settled that all questions of policy are for the determination of the legislature, and not for the courts."

It appears that the public policy of this State, embodied in *R. S.* 2:26–190, 191 and 192, is in favor of the granting of a set-off. Said statutes deal with the right to set-off by mutually indebted persons.

The petition to set aside the order for offset is denied.