ROBERT F. TWIGG *vs.* WM. S. HOPKINS ET AL.
WM. S. HOPKINS ET AL. *vs.* ROBERT F. TWIGG.

*Injunction Against Judgment—Neglect to Defend at Law—Enforcing Set-off in Equity Against Judgment.*

The execution of a judgment by default will not be restrained upon the ground that the amount recovered was excessive, or that the defendant was entitled to a credit by way of recoupment, when the party asking for the injunction neglected to avail himself of these defences at law.

When there are mutual claims between the judgment creditor and the judgment debtor and the judgment debtor is insolvent, equity will require him to deduct from his judgment the amount which he owes to the judgment debtor. But where there is no insolvency the reason for equitable interference does not exist.

Cross-appeals from a decree of the Circuit Court for Allegany County (SLOAN, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*Ferdinand Williams*, for Twigg.

*Robert H. Gordon* (with whom was *J. W. S. Cochrane* on the brief), for Hopkins *et al.*

BRYAN, J., delivered the opinion of the Court.

William Hopkins and Thomas Hopkins, doing business as Hopkins & Son, obtained a judgment by default against Robert Twigg. In due course the judgment was made final and the damages were assessed at three hundred and sixty-five dollars. Twigg filed a bill in equity against the plaintiffs in the suit at law and obtained a preliminary injunction restraining the collection of the judgment. It was alleged that Twigg was prevented from making a successful defence to the law suit by the fraudulent conduct of the

elder Hopkins in promising to dismiss it. At the hearing in the Court below it appeared that this allegation was not sustained by the evidence. The cause of action on which the judgment was rendered was a written contract whereby Hopkins and Son agreed to sink an artesian well on the land of Twigg for the sum of two dollars and fifty cents a foot, and also to furnish casing and a windmill pump in consideration of the contract price. And Twigg agreed to pay for the work as it was performed, and to haul the engine which was to be used from Cumberland to the place where the work was to be done, and back again for the sum of five dollars, and to furnish coal and water for the working of it. Hopkins & Son alleged that he had bored to the depth of a hundred and fifty feet, and that he was prevented from the further prosecution of the work by the failure of Twigg to make the stipulated payments. There is a slight difference between the parties as to the depth to which the well was sunk, Twigg alleging that it was only a hundred and forty-six feet deep ; but there is no doubt whatever that Twigg was considerably behind in his payments. In his bill he claims a credit of only forty-eight dollars. He had every possible opportunity to appear and defend the suit, but he saw fit to neglect to do so. The contention on the part of Hopkins was that he was entitled to recover the full contract price in consequence of the failure of Twigg to furnish him with the money necessary for the continuance of the work. Twigg might have contested this view of the controversy, but he voluntarily neglected to give any attention to the matter, and, therefore, must blame himself if the result is unsatisfactory to him.

In *Green* v. *Hamilton*, 16 Md. 317, a judgment by default had been rendered and made final in the absence of the defendant, and it was attempted to set it aside on the ground of fraud, deceit, surprise and irregularity. The allegation of fact was that the judgment was rendered for a thousand dollars, when the plaintiff's own evidence appearing in the record showed that the amount due was not

more than about two hundred dollars. The Court said that the facts alleged showed only a reason for a new trial on the ground that the jury had found against the evidence in the cause, and that they did not support the charge of fraud, deceit, surprise or irregularity; and that it could not go into the circumstances of the case, and perform the office of jurors, and that the judge who tried the cause might in the exercise of his legal discretion have afforded relief. It was furthermore said that it was the defendant's own laches that he was not present at the trial and that the plaintiff ought not to suffer for it. The Court pointedly refused to reverse the maxim *vigilantibus non dormientibus leges subveniunt*. It is well settled that a Court of Equity will not interfere with the execution of a judgment at law, unless the defendant without any negligence or default on his own part has been prevented by accident, or the act or fraud of the opposite party from availing himself of a just defence. Of course, we do not now speak of reasons of a purely equitable character, which are not cognizable at law. It is unnecessary in this place to refer to the many authorities which have followed and approved *Gott* v. *Carr*, 6 Gill & Johnson, 312.

The Court below dissolved the injunction except as to the sum of sixty-four dollars, which it found was the amount of the credits to which Twigg was entitled, and in respect to this sum the injunction was made perpetual. Both parties appealed. In our opinion the injunction ought to have been entirely dissolved and the bill dismissed. The Court had not the power to open the case, retry it, and adjust the account between the parties. It regarded the excess in the judgment as in the nature of a set-off to which Twigg was entitled, and held that Hopkins and Son were insolvent, and that as the amount could not be collected from them, it ought to be deducted from the judgment. Where there are mutual claims between the judgment creditor and the judgment debtor, and the judgment creditor is insolvent, a Court of Equity will require him to deduct from his judgment the

amount which he owes to the judgment debtor. *Levy* v. *Steinback*, 43 Md. 217. The insolvency of the creditor makes it impossible to satisfy the debtor's claim in any other way. But where there is no insolvency the reason for equitable interference does not exist. In *Cook* v. *Murphy*, 7 Gill and Johnson, 282, a judgment at law had been rendered, and the defendant sought relief in equity on the allegation that the judgment was for a much larger sum than was really due, and that in consequence of the absence of a witness the defendant had been unable at the trial at law to prove a considerable set-off. The Court said there was no ground for equitable relief, and that the complainant's remedy was at law. In the present case it is not alleged in the bill of complaint that the Hopkinses are insolvent, and the proof does not show it; although their pecuniary means are evidently quite small. Nor has Twigg any counter-claim against them which he could maintain in another suit, except for a small amount below the jurisdiction of a Court of Equity. The remainder of his demand is for a diminution of the damages assessed in the suit at law, and it depends upon and grows out of the contract on which that suit was brought. It was a proper subject of inquiry therein and was settled by the judgment then rendered. *Carroll* v. *Quynn*, 13 Md. 390. In *Annan* v. *Houck*, 4 Gill, 331, it is said : A set-off means a " cross-claim, for which an action might be maintained against the plaintiff, and is very different from a mere right to a deduction from, or reduction of, his demand, on account of some matter connected therewith."

Upon the whole we think that we may apply to this case the doctrine stated in *Gott* v. *Carr*, 6 Gill and Johnson, 312. " The well-settled general rule being that a Court of Equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts, or on grounds, of which the party seeking the aid of chancery, could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite

party, unmixed with any negligence or fault on his own part.   And chancery will only sustain a bill invoking its aid, upon some new matter of equity, not arising in the former case, or seeking some relief to which the powers of the Court of law were not fully adequate.   It is a sound and useful rule in the administration of justice, for the prevention of negligence, and harassing and protracted litigation, and the consequent burdensome accumulation of costs.   A material departure from, or relaxation of which, would prove vexatious in practice, and be felt as a public grievance, by the great delays, and sometimes abuse of justice to which it would lead."

The decree below must be reversed, and a decree entered in this Court dismissing the bill with costs in both Courts.

*Reversed and bill dismissed.*