## CLACKAMAS TOWN CENTER ASSOCIATES,
*Appellant,*

*v.*

## JANDEL FOODS, INC.,
*Defendant,*

*and*

## QUERIN,
*Respondent.*

(87-11-190; CA A49239)

777 P2d 420

Lee Aronson, Portland, argued the cause for appellant.

With him on the briefs were Gile R. Downes and Schulte, Anderson, DeFrancq, Downes & Carter, P.C., Portland.

Tracy J. Mabry, Portland, argued the cause for respondent. With her on the brief was Ragen, Tremaine, Krieger, Schmeer & Neill, Portland.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff seeks a declaration that its right of setoff against a judgment owed by it to defendant Jandel Foods, Inc. (Jandel) takes priority over an attorney's lien held by defendant Querin on that judgment. The trial court granted summary judgment to Querin, holding that his attorney's lien on Jandel's judgment against plaintiff takes precedence over plaintiff's right of setoff. Plaintiff appeals.

Jandel was plaintiff's tenant. In 1986, plaintiff brought an FED action against Jandel, alleging failure to pay rent. Jandel, which was then represented by Querin, prevailed and, on February 26, 1987, was awarded a judgment for $14,000 in attorney fees and $793.60 in costs and disbursements. Querin filed an attorney's lien on that judgment on March 5, 1987. Plaintiff filed a second FED on February 26, 1987, and received a judgment on July 16, 1987, for restitution of the premises and for attorney fees in the amount of $15,734.50. Querin did not represent Jandel in the second action.

Plaintiff brought this action against Jandel and Querin to determine whether its right of setoff is superior to Querin's attorney's lien. A default judgment was entered against Jandel, requiring the setoff and staying Jandel from executing on its judgment for more than $262.65, the difference between the two judgments.[1] The trial court later granted Querin's motion for summary judgment and entered a judgment declaring that his attorney's lien is superior to plaintiff's right of setoff.

■　　ORS 87.480 states:

> "Attorneys have the same right and power over actions, suits, proceedings, judgments, decrees, orders and awards to enforce their liens as their clients have for the amount due thereon to them."

Plaintiff contends that, because defendant Jandel may not collect its judgment against plaintiff, that judgment having already been set off pursuant to the default judgment, and because the statute equates Querin's rights to those of Jandel,

---

[1] That judgment was a final one complying with ORCP 67B and was not appealed.

Querin may enforce his lien only to the extent that the amount of his lien exceeds plaintiff's judgment.

The question is whether Jandel's permitting a judgment by default to be entered against it, over which Querin had no control, precludes Querin from pursuing his claim under the statutory attorney's lien. We think not. ORS 87.475(1)[2] provides that a settlement between the parties to the action to which the lien relates does not affect the attorney's lien. ORS 87.475(2)[3] provides that a party to the action does not have the right to satisfy the judgment until the claim for attorney fees is satisfied in full. Although those statutory provisions do not expressly cover the situation here, Jandel's permitting the default judgment to be entered against it is tantamount to its settling its judgment against plaintiff or satisfying plaintiff's judgment against it, all of which was done without satisfying Querin's attorney lien. We conclude that Querin is not precluded from litigating the merits of the setoff, and we turn to that question.

In *Hartford Accident v. Pyle,* 271 Or 97, 530 P2d 843 (1975), the court appears to have equated an attorney's lien with an assignment of the judgment to the attorney and stated that "the setting off of one judgment against the other in such a situation is not a matter of right but depends upon principles of equity and justice under the circumstances." 271 Or at 100. It then outlined five factors that have been considered in determining where the equities lie:

"1) [W]ere both judgments in existence when the assignment was made to the attorneys?

"2) [I]f both judgments were in existence at the time of the assignment, did the attorneys-assignees know of the judgment against their assignor?

---

[2] ORS 87.475(1) provides:

"Except as provided in subsections (3) and (4) of this section, the lien created by ORS 87.445 is not affected by a settlement between the parties to the action, suit or proceeding before or after judgment, decree, order or award."

[3] ORS 87.475(2) provides:

"Except as provided in subsections (3) and (4) of this section, a party to the action, suit or proceeding, or any other person, does not have the right to satisfy the lien created by ORS 87.445 or any judgment, decree, order or award entered in the action, suit or proceeding until the lien, and claim of the attorney for fees based thereon, is satisfied in full."

"3) [W]as the client-assignor insolvent at the time of the assignment?

"4) [D]id the two judgments arise out of the same transaction or related transactions?

"5) [D]o both judgments include attorney fees so that, in effect, attorney fees will be set off against attorney fees?" 271 Or at 101.

In that case, all five questions were answered in the affirmative, and the court held that the plaintiff's right of setoff had priority over the attorney's assignment of judgment and attorney's lien.

Here, both judgments were *not* in existence when the attorney acquired his lien, so Querin did not know of any judgment against his client. However, he did know that another FED action had been filed against Jandel that could result in a judgment for attorney fees. He is charged with knowledge that, if plaintiff were to prevail in the second action and obtain a judgment for attorney fees, that judgment was subject to being set off against the prior judgment. The trial court assumed for the purposes of the summary judgment that the client, Jandel, was insolvent when Querin obtained his lien. The two judgments arose from related transactions. Finally, both judgments include attorney fees.

Although only three of the five factors clearly weigh in favor of plaintiff, the court in *Hartford* stated that it would not say how many factors are necessary to justify a setoff. In *Ketcham v. Selles,* 96 Or App 121, 772 P2d 419, *rev den* 308 Or 315 (1989), we stated that the key factors are whether both judgments were in existence at the time of the assignment and whether the attorney-assignee knew of the judgment against his client-assignor when the assignment was made. The reason, of course, is that the attorney there knew of the possibility of a setoff between the two existing judgments. 96 Or App at 126. Here, Querin knew of the possibility that a judgment for attorney fees in the pending second action would present the possibility of a setoff against the judgment on which he claimed a lien. *Hartford* tells us that the controlling principle is whether equity should allow a setoff. The court said:

"If it were otherwise, plaintiff not only would have to pay its own attorney's fees from its independent funds since it would

not be able to collect any part of its judgment from its insolvent opponent, but plaintiff also would have to pay its insolvent opponent's attorney fees as well. When the judgments arise out of the same controversy, such a result would be unconscionable despite defendants' services being responsible for the judgment for attorney's fees in favor of their clients. Upon weighing the equities, it appears that those of plaintiff preponderate." 271 Or at 101.

That is also the case here, if Jandel is insolvent, in which case plaintiff is entitled to a setoff.

Because there is an issue of fact as to whether Jandel was insolvent when Querin obtained his lien, summary judgment should not have been granted.

Reversed and remanded.